No. 15-15996

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### MANUEL DE JESUS ORTEGA MELENDRES, ET AL.,

*Plaintiffs-Appellees*

v.

### MARICOPA COUNTY,
*Defendant-Appellant*

and

### JOSEPH M. ARPAIO,
*Defendant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## 2:07-cv-02513-GMS
## The Honorable G. Murray Snow
## United States District Judge

## BRIEF FOR PLAINTIFFS-APPELLEES

**Stanley Young**
**Michelle L. Morin**
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
syoung@cov.com
mmorin@cov.com

**Cecillia D. Wang**
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950
cwang@aclu.org

*Attorneys for Plaintiffs-Appellees*
*MANUEL DE JESUS ORTEGA MELENDRES, ET AL.*

**Dan Pochoda**
ACLU FOUNDATION OF ARIZONA
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376
dpochoda@acluaz.org

**Andre Segura**
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654
asegura@aclu.org

**Anne Lai**
401 E. Peltason Dr.
Law 4800-P
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066
alai@law.uci.edu

**Jorge Martin Castillo**
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
jcastillo@maldef.org

*Attorneys for Plaintiffs-Appellees*

***MANUEL DE JESUS ORTEGA MELENDRES, ET AL.***

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF THE ISSUES........................................................ 2

STATEMENT OF THE CASE............................................................ 3

STANDARD OF REVIEW ................................................................. 8

SUMMARY OF ARGUMENT .......................................................... 8

ARGUMENT ..................................................................................... 10

I.      This Court Cannot Consider the Merits of this Untimely Appeal
        Because this Court Lacks Jurisdiction........................................ 10

II.     Under *Monell*, the County Is Liable For the Unconstitutional Policies
        of Its Sheriff ............................................................................... 11

        A.      The Sheriff Is the Decision-Maker For The County on Law
                Enforcement Matters ........................................................ 11

        B.      The County Board of Supervisors' Alleged Lack of Control of
                the Sheriff Is Irrelevant To the Issue of Liability Under *Monell* ....... 14

III.    No Due Process Violation Results From the County's Liability For Its
        Sheriff's Constitutional Violations And Its Being Bound By the
        Judgments Against the Sheriff...................................................... 18

        A.      The Law Of The Case and Other Preclusion Doctrines Apply.......... 18

        B.      The County's Participation In the Litigation Makes The
                Preclusion Fair.................................................................. 21

        C.      The County Waived Any Right to Object to Its Re-Joinder ............. 26

IV.     The Abstract Issues Raised By The County In Sections I and II Of Its
        Brief Are Not Ripe For Resolution By This Court ....................... 27

V.      The Injunctive Relief Previously Affirmed by This Court Was Within
        the District Court's Discretion..................................................... 29

CONCLUSION ................................................................................................. 32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addington v. U.S. Airline Pilots Ass'n*,
606 F.3d 1174 (9th Cir. 2010) ..........................................................28

*Arizona v. California*,
460 U.S. 605 (1983) ..........................................................................19

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ............................................................31

*Bowles v. Russell*,
551 U.S. 205 (2007) ............................................................................2

*Braillard v. Maricopa Cnty.*,
232 P.3d 1263 (Ariz. Ct. App. 2010) .........................................passim

*Brewster v. Shasta Cnty*,
275 F.3d 803 (9th Cir. 2001) ............................................................14

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ..........................................................................12

*Cnty. of Los Angeles, Cal. v. Goldstein*,
134 S. Ct. 906, 187 L. Ed. 2d 778 (2014) ........................................14

*Cromwell v. County of Sac*,
94 U.S. 351 (1876) ............................................................................19

*Ctr. For Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*,
533 F.3d 780 (9th Cir. 2008) ............................................................18

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004) ..............................................................1

*Federated Dept. Stores, Inc. v. Moitie*,
452 U.S. 394 (1981) ..........................................................................19

*Flanders v. Maricopa Cty.*,
54 P.3d 837 (Ariz. App. 2002) ...............................12, 13, 17, 21, 22

*Floyd v. City of New York*,
   959 F. Supp. 2d 668 (S.D.N.Y. 2013) ................................................................31

*Fridena v. Maricopa Cnty.*,
   504 P.2d 58 (Ariz. App. 1972) ...................................................................13, 15

*Goldstein v. City of Long Beach*,
   715 F.3d 750 (9th Cir. 2013) ..............................................................................14

*Grech v. Clayton County, Georgia*,
   335 F.3d 1326 (11th Cir. 2003) (en banc) .............................................16, 17, 18

*Herrington v. Cnty. of Sonoma*,
   12 F.3d 901 (9th Cir. 1993) ................................................................................19

*Hoptowit v. Spellman*,
   753 F.2d 779 (9th Cir. 1985) ..............................................................................20

*In re Gottheiner*,
   703 F.2d 1136 (9th Cir. 1983) ............................................................................20

*Jett v. Dallas Independent School District*,
   491 U.S. 701 (1989)............................................................................................12

*Keith v. Volpe*,
   118 F.3d 1386 (9th Cir. 1997) ...........................................................................11

*Kentucky v. Graham*,
   473 U.S. 159 (1985).....................................................................18, 20, 22, 23

*Lamb–Weston, Inc. v. McCain Foods, Ltd.*,
   941 F.2d 970 (9th Cir. 1991) ...............................................................................8

*Marino v. Ortiz*,
   484 U.S. 301 (1988)............................................................................................11

*McMillian v. Monroe County*,
   520 U.S. 781 (1997)............................................................................................12

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ...................................................................passim

*Milliken v. Bradley*,
433 U.S. 267 (1977)..................................................................................31

*Mohawk Industries, Inc. v. Carpenter*,
558 U.S. 100 (2009)..................................................................................27

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978)............................................................................passim

*Montana v. United States*,
440 U.S. 147 (1979)..................................................................................19

*Mora v. Arpaio*,
No. CV-09-1719-PHX-DGC, 2011 WL 1562443 (D. Ariz. Apr. 25,
2011) ........................................................................................................14

*Normandeau v. City of Phoenix*,
516 F. Supp. 2d 1054 (D. Ariz. 2005) .....................................................20

*Protectmarriage.com-Yes on 8 v. Bowen*,
752 F.3d 827 (9th Cir. 2014), *cert. denied sub nom.*,
*ProtectMarriage.com-Yes on 8 v. Padilla*, 135 S. Ct. 1523 (2015) ...................27

*Puente Arizona v. Arpaio*,
76 F. Supp. 3d 833 (D. Ariz. Mar. 27, 2015) ..........................................13

*Puente Arizona v. Arpaio*,
No. CV-14-01356-PHX-DGC, 2015 WL 1432674 (D. Ariz. Mar.
27, 2015) ..................................................................................................15

*Regal Knitwear Co. v. N.L.R.B.*,
324 U.S. 9 (1945)......................................................................................22

*Richards v. Jefferson County*,
517 U.S. 793 (1996)..................................................................................24

*Rizzo v. Goode*,
423 U.S. 362 (1976)............................................................................29, 30

*Saltarelli v. Bob Baker Grp. Med. Trust*,
35 F.3d 382 (9th Cir. 1994) .......................................................................8

*Smalley v. Contino*,
No. CV12-2524-PHX-DGC, 2013 WL 858103 (D. Ariz. Mar. 7,
2013) ........................................................................................................ 13

*Stephanie-Cardona LLC v. Smith's Food & Drug Ctrs., Inc.*,
476 F.3d 701 (9th Cir. 2007) ........................................................ 1, 10

*Tait v. W. Maryland Ry. Co.*,
289 U.S. 620 (1933) ................................................................................ 21

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ....................................................... 22, 23, 24, 25

*Texas v. United States*,
523 U.S. 296 (1998) ................................................................................ 28

*Thomas v. Union Carbide Agricultural Products Co.*,
473 U.S. 568 (1985) ................................................................................ 28

*United States v. City of Parma, Ohio*,
661 F.2d 562 (6th Cir. 1981) .............................................................. 31

*United States v. Gila Valley Irrig. Dist.*,
31 F.3d 1428 (9th Cir. 1994) .............................................................. 28

*United States v. Maricopa Cnty., Ariz.*,
915 F. Supp. 2d 1073 (D. Ariz. 2012) ............................................ 13

*Washington Mut. Inc. v. United States*,
636 F.3d 1207 (9th Cir. 2011) .......................................................... 20

*WMX Techs., Inc. v. Miller*,
104 F.3d 1133 (9th Cir. 1997) (en banc) ......................................... 8

**Statutes**

28 U.S.C. § 1291 ........................................................................................27

28 U.S.C. § 2107(a) ......................................................................................1

42 U.S.C. § 1983 ....................................................................11, 12, 15, 16

A.R.S. § 11-251(1) ......................................................................................15

A.R.S. § 11-251(14) ......................................................................................7

A.R.S. § 11-253 ..........................................................................................15

A.R.S. § 11-401 ..................................................................................13, 15

A.R.S. § 11-444(A) ..........................................................................10, 14, 16

**Other Authorities**

Ariz. Const., art. XII, § 3 ..........................................................................13

Fed. R. Civ. P. 65(d)(2).............................................................................22

Federal Rule of Appellate Procedure 4(a) ................................................1

Federal Rule of Appellate Procedure 32(a)(7)........................................35

Federal Rule of Civil Procedure 21 ..........................................................5

## INTRODUCTION

Maricopa County's appeal attempts to turn a simple, ministerial matter—this Court's prior naming of the proper jural entity in this case—into a wholesale relitigation of years of orders and decisions culminating in injunctions which have already been the subject of two opinions by this Court in prior appeals filed by the County's Sheriff. The present appeal should be dismissed for lack of jurisdiction. The Arizona courts have held that the Sheriff is the law enforcement policymaker for the County and that the County is liable for the Sheriff's unlawful policies in that field. The County may therefore not pursue a second and tardy appeal after the adverse resolution of the Sheriff's earlier appeal. And, even if considered on its merits, this District Court's injunctions, as modified in part in light of this Court's most recent opinion, fall well within its discretion.

## JURISDICTIONAL STATEMENT

Federal Rule of Appellate Procedure 4(a) requires that a notice of appeal be filed within 30 days after entry of the judgment or order appealed from. Fed. R. App. P. 4(a); see also 28 U.S.C. § 2107(a). The requirement to file a timely notice of appeal is jurisdictional and non-waivable. *Stephanie-Cardona LLC v. Smith's Food & Drug Ctrs., Inc.*, 476 F.3d 701, 703 (9th Cir. 2007) (citing *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 869 (9th Cir. 2004)). The orders the County seeks to appeal from are the December 23, 2011 Order Denying

in Part and Granting in Part Defendants' Motion for Summary Judgment, the May 24, 2013 Findings of Fact and Conclusions of Law, the October 2, 2013 Supplemental Permanent Injunction/Judgment Order, and the April 4, 2014 Amendments to the Supplemental Permanent Injunction/Judgment Order. *See* Dkt. 17-2 (attaching orders). The County's notice of appeal was filed over one year after each of these orders issued. For that reason, and the reasons set forth in Plaintiff-Appellees' motion to dismiss this appeal and reply brief in support, Dkt. 13 and 17, this Court lacks jurisdiction. *See Bowles v. Russell*, 551 U.S. 205, 209 n.2 (2007) ("time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century.").

## STATEMENT OF THE ISSUES

1.      Whether Maricopa County may now pursue a separate, time-barred appeal of the District Court's orders, when its final policymaker as to relevant matters, the Sheriff, has already appealed those same orders and this Court has already decided that appeal on the merits.

 2.      Whether the County has suffered or will suffer any due process violation from its formal re-joinder to this case, by order of this Court, *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015), in place of the Maricopa County Sheriff's Office ("MCSO"), where the County (a) had received notice of the action before agreeing to be dismissed without prejudice on the condition that it could later be

re-joined, (b) had many opportunities to be heard and actually did appear in the lawsuit after its dismissal, and (c) has been and will be responsible under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), and applicable Arizona law for the constitutional violations committed by its chief law enforcement decision-maker, Sheriff Arpaio.

3.      Whether the issues that the County seeks to raise about the imputation of the Sheriff's liability to it and about whether the County is bound by judgments against the Sheriff are currently ripe for adjudication and otherwise satisfy the requirement of an actual case or controversy, when the District Court has not issued orders that the County's arguments, if successful, would negate.

4.      If and only if the merits are reached, whether, in light of the evidence in the record and the law of this case, this Court correctly decided the previous appeal from the District Court's Supplemental Injunction.

## STATEMENT OF THE CASE

The December 12, 2007 complaint that commenced this action expressly named Maricopa County as a defendant, along with Sheriff Arpaio "in his individual and official capacity as Sheriff of Maricopa County," the Maricopa County Sheriff's Office, and unnamed sheriff's deputies. SER332-352. The County remained a named defendant in an Amended Complaint, ER00591, and participated in this case as a formal party until it was dismissed without prejudice

3

on October 13, 2009, based on the parties' September 21, 2009 stipulation. ER00583, 586. *See* ER00699-717 (docket entries detailing months of direct participation by the County).

That stipulation, executed the year before the Arizona Court of Appeals' ruling in *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010), and signed by the County, specifically contemplated that the County could be re-joined at any time during the litigation, if necessary. ER00586 (stipulation to dismissal "without prejudice to re-joining [the County] as a Defendant in this lawsuit at a later time if doing so becomes necessary to obtain complete relief."). The District Court order dismissing the County as a named party, based on that stipulation, did so without prejudice to a later re-joinder. ER00583.

The case eventually proceeded to a bench trial, after which the District Court found that the defendants had committed Fourth and Fourteenth Amendment violations and then ordered injunctive relief. Defendants Sheriff Arpaio and the Maricopa County Sheriff's Office appealed from the final judgment of the District Court, asserting, among other things, that MCSO was not a "jural entity," *i.e.*, that MCSO "lacked separate legal status from the County and therefore was incapable of suing or being sued in its own name," and that the Supplemental Injunction (ER00125-183, as modified, ER00116-124) was overbroad to the extent it applied to conduct outside MCSO "saturation patrols." *Melendres*, 784 F.3d at 1259-60.

This Court largely affirmed the judgment below, finding that the District Court did not clearly err in finding that Defendants' unconstitutional policies applied across-the-board to all law enforcement decisions. *Id.* at 1260-61.

This Court also held, based on the recent Arizona Court of Appeals decision in *Braillard*, that MCSO, a nonjural entity, had improperly been named as a party. *Id*. at 1260. Following Arizona law, this Court accordingly ordered that "Maricopa County be substituted as a party in lieu of MCSO," citing *Braillard* and Federal Rule of Civil Procedure 21 ("Misjoinder of parties is not a ground for dismissing an action. On . . . its own, the court may at any time, on just terms, add or drop a party"). *Id*.

The County's assertion in its opening brief that "the [District Court] made no findings of unlawful conduct on the part of the County," Defendant/Appellant Maricopa County, Arizona's Opening Brief ("Br.") at 7, is not accurate, given (1) the fact that the County is the jural entity of which MCSO is a part, and (2) the findings of the District Court that the MCSO's policies and practices at issue were unconstitutional. *Melendres*, 784 F.3d at 1258; ER00184-325. Both MCSO and Sheriff Arpaio, the County's principal policymaker with respect to law enforcement, participated in the bench trial and appeal that led to the decision of this Court affirming the District Court's findings of unconstitutionality and largely

affirming its Supplemental Injunction. *Melendres*, 784 F.3d at 1267.[1] Under Arizona law, that unconstitutional activity by the Sheriff and MCSO gives rise to liability for the County. *Braillard*, 232 P.3d at 1275 ("Because we have concluded that MCSO is a nonjural entity . . . a claim, based on the training issues identified in our discussion of Arpaio's liability, can be made properly against the County.").

The County did participate in this case between its October 13, 2009 dismissal as a party and this Court's April 15, 2015 decision. Even ignoring the continued presence as a defendant of Sheriff Arpaio, the County's decision-maker on law enforcement matters, attorneys for the County appeared on a number of occasions after the County's nominal dismissal. For example, attorney Tom Irvine appeared for the County at a hearing on March 19, 2010 in connection with the production of MCSO documents from a County archive, which was required pursuant to Plaintiffs' discovery requests. SER521-577. Attorney David Selden appeared for the County, filed papers, and spoke at hearings on September 9, 2010 and October 1, 2010 regarding what Mr. Selden referred to as "an internal dispute within Maricopa County" about which attorney would represent the Sheriff in the lawsuit. SER328-331; SER318-327; SER236-253; SER219-235; SER513. The County appointed Tom Liddy of the Maricopa County Attorney's Office to

---

[1] One provision, deemed overbroad by this Court, was subsequently modified pursuant to this Court's instructions on remand. *Id.*; *see also* ER00844-845, SER046-048.

represent the Sheriff. SER509-510 at 12:9-13:3; SER467-470 at 5:21-6:9, 8:16-9:3; SER200; SER254-317. Mr. Liddy appeared for the Sheriff and stated that "[t]he Board of Supervisors of a county has the right to control any litigation to which the county is a party. A.R.S. § 11-251(14). . . . The right to control litigation includes the right to select counsel. . . . Litigation to which a county is a party includes any litigation where county money is at risk." SER254-255 (internal parenthetical and citations omitted). Mr. Liddy, after his appointment by the County, remained as one of the Sheriff's attorneys until 2015. SER049-059. Mr. Selden, as an attorney of record for the County itself, has remained on the District Court's electronic service list from the time he first appeared in August 2010 until the present day. ER00688-ER00689.

The County also participated in this litigation as a formal and separately represented party on March 20, 2015, when the County accepted the District Court's invitation to be heard at a status conference regarding potential settlement of contempt issues. ER00804, ER00806 (No. CV-07-2513, ECF No. 939, Mar. 16, 2015 Notice Regarding Status Hearing, and ECF No. 954, minute entry for March 20, 2015 hearing); SER363, SER401-407. Thus, between the time of its formal dismissal in October 2009 and its formal re-joinder in April 2015, the County appeared in and had ample opportunity to be heard in the District Court. ER00806-881.

7

## STANDARD OF REVIEW

This Court decides issues relating to its own jurisdiction *de novo*. *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997) (en banc). The District Court's findings are reviewed for clear error and its legal conclusions are reviewed *de novo*. *Melendres*, 784 F.3d at 1260 (citing *Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382, 384–85 (9th Cir. 1994)). The scope and terms of the District Court's injunction, however, are reviewed for an abuse of discretion. *Id.* (citing *Lamb–Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) ("A district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction. Appellate review of those terms is correspondingly narrow")).

## SUMMARY OF ARGUMENT

The County's instant appeal brief essentially attempts to contest this Court's earlier opinion, both as to the Court's ruling that the County is the proper defendant under *Braillard*, *Melendres*, 784 F.3d at 1260, and as to the Court's decision largely affirming the District Court's Supplemental Injunction order. This is evident from the overlap between the County's September 24, 2015 Petition for Writ of Certiorari and its opening brief in this appeal. ER00001-35. As set forth in Plaintiffs-Appellees' opposition to that petition, SER001-45, and below, this Court's ruling correctly applied *Braillard*, in which the Arizona Court of Appeals

held the County was the proper jural entity for claims against MCSO. *Braillard*, 232 P.3d at 1269. This appeal is not the proper venue for challenging the County's substitution. The County already made such a challenge in its petitions for rehearing and for certiorari.

The County's appeal should also be dismissed because this Court lacks jurisdiction to consider it. The appeals are time-barred for the reasons stated in Plaintiffs' motion to dismiss (Dkt. 13 and 17). The County's arguments that it should not be liable for the constitutional violations of its Sheriff and that it should not be bound by the judgments against its Sheriff are incorrect and do not create a right of the County to pursue a separate and tardy appeal after the Sheriff's prior appeal was unsuccessful. Under both Arizona and federal law, including *Monell*, the County is the proper jural entity to be sued in relation to the policies and practices of MCSO and Sheriff Arpaio that are at issue in this case. Because the Sheriff is the County's decision-maker on law enforcement issues, the County is so liable and should be so bound, and its attempted separate appeal is both time-barred and precluded by the law of the case and related preclusion doctrines.

Even apart from *Monell*, there is no due process violation in holding the County to the earlier judgments, because the County had notice and an opportunity to be heard, was always (through MCSO and Sheriff Arpaio, as well as expressly through its own designated counsel Mr. Irvine and Mr. Selden) a participant in this

9

matter, and would be required to pay the costs of MCSO's implementation of the Supplemental Injunction in any event. Br. at 18 n.4 (citing A.R.S. § 11-444(A)); *see also* SER254-SER255 ("Litigation to which a county is a party includes any litigation where county money is at risk."); SER200 (Maricopa County's "Office of Special Litigation Services appoints counsel for the Sheriff in cases such as this.").

Finally, in light of this Court's previous opinion deciding the Sheriff's appeal from the Supplemental Injunction on the merits, and in light of the procedural history of this case and the findings of the District Court, the Supplemental Injunction remains properly within the District Court's discretion.

## ARGUMENT

### I. This Court Cannot Consider the Merits of this Untimely Appeal Because this Court Lacks Jurisdiction.

As set forth in Plaintiff-Appellants' Motion to Dismiss, Dkt. 13 and 17, this Court has no jurisdiction and is without power to consider the merits of the County's appeal because the County's notice of appeal was not timely filed. The County does not argue that any reason exists to disregard the 30-day jurisdictional bar to this appeal, and indeed there is no basis for disregarding the 30-day requirement, which is unwaivable. *Stephanie-Cardona LLC*, 476 F.3d at 703. The County always had notice of these proceedings and of all the judgments herein, both as a formal party and through the continued appearance of its attorney David

Selden after the County was dismissed. *Supra* at 6-7. The District Court issued the last of the appealed-from orders on April 4, 2014, well over 30 days before the County noticed its appeal on May 15, 2015. ER00111-112. Had the County wished to contest any of the challenged District Court judgments, it could have intervened to assert a timely appeal after those judgments were issued, regardless of whether the County was, at those times, named as a formal party. Dkt. 13 at 7-8 (citing *Keith v. Volpe*, 118 F.3d 1386, 1391 (9th Cir. 1997), *Marino v. Ortiz*, 484 U.S. 301, 304 (1988)).

Two of the County's three arguments on appeal are really further rebuttals to Plaintiffs' Motion to Dismiss this appeal. *See* Dkt. 13 (Motion to Dismiss Appeal). The County argues that (1) liability for the Sheriff's unconstitutional acts cannot be imputed to the County (Br. 12-18) and (2) prior judgments of the District Court (and by implication this Court) cannot, consistent with due process, be binding on the County if the County was not formally a party (Br. 18-22). As shown below, both of the County's arguments are wrong.

## II.   Under *Monell*, the County Is Liable For the Unconstitutional Policies of Its Sheriff.

### A.   The Sheriff Is the Decision-Maker For The County on Law Enforcement Matters.

A county or municipality is liable under 42 U.S.C. § 1983 when policies executed "by those whose edicts or acts may fairly be said to represent official

11

policy" inflict constitutional injury. *Monell*, 436 U.S. at 694. "If the sheriff's actions constitute county 'policy,' then the county is liable for them." *McMillian v. Monroe County*, 520 U.S. 781, 783 (1997). The "identification of policymaking officials is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988); *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989); *McMillian*, 520 U.S. at 786 (an official's "final policymaking authority" for a county is a question of state law).

Under Arizona law, on matters of law enforcement, Sheriff Arpaio is the final policymaker for Maricopa County. This is the assumption underlying this Court's prior decision to order the County's re-joinder. *Melendres*, 784 F.3d at 1260 (citing *Braillard*). The Arizona Court of Appeals has held that the County is liable for the Sheriff's unconstitutional law enforcement policymaking. *Flanders v. Maricopa Cty.*, 54 P.3d 837, 847 (Ariz. App. 2002) (concluding in jail conditions case that the Sheriff is a final policymaker for the County for purposes of 42 U.S.C. § 1983 liability). The Arizona state court's decision in *Braillard* confirms this conclusion. That case involved a claim for wrongful death alleged to have been caused by inadequate training of MCSO personnel. After holding that MCSO was a nonjural entity, the Arizona Court of Appeals stated, "Because we have concluded MCSO is a nonjural entity, such a claim, based on the training issues identified in our discussion of Arpaio's liability, can be made properly against the

County." *Braillard*, 232 P.3d at 1275. These Arizona appellate court decisions

refute the County's argument that the Sheriff was not acting as policymaker for the

County. Under *Monell*, those Arizona court decisions make the County liable for

the Sheriff's law enforcement policies.[2]

Federal district courts applying Arizona law have consistently held that the

County is liable for Sheriff Arpaio's law enforcement policymaking. *Puente*

*Arizona v. Arpaio*, 76 F. Supp. 3d 833, 868 (D. Ariz. Mar. 27, 2015) ("*Flanders*

compels the conclusion that Sheriff Arpaio is the final policymaker

for the County on [all] law-enforcement matters" because "the County has not

explained, nor can the Court discern, how the County has more control over the

Sheriff's jail-management decisions than over his law-enforcement decisions.");

*Smalley v. Contino*, No. CV12-2524-PHX-DGC, 2013 WL 858103, at *5 (D. Ariz.

Mar. 7, 2013) (same); *United States v. Maricopa Cnty., Ariz.*, 915 F. Supp. 2d

---

[2] Arizona constitutional and statutory provisions confirm that the Sheriff acts as the law enforcement decision-maker for the County. The state's Constitution creates "in and for each organized county of the state the following officers who shall be elected by the qualified electors thereof: a sheriff, a county attorney, a recorder, a treasurer, an assessor, a superintendent of schools and at least three supervisors...." Ariz. Const., art. XII, § 3; *see also* A.R.S. § 11-401 ("[t]he officers of the county are . . . [the] Sheriff . . ."); *Fridena v. Maricopa Cnty.*, 504 P.2d 58, 61 (Ariz. App. 1972) ("the Sheriff is a county officer under A.R.S. § 11-401 subsec. A, par. 1....").

1073, 1084 (D. Ariz. 2012) (same); *Mora v. Arpaio*, No. CV-09-1719-PHX-DGC, 2011 WL 1562443, at *7 (D. Ariz. Apr. 25, 2011) (same).[3]

**B.     The County Board of Supervisors' Alleged Lack of Control of the Sheriff Is Irrelevant To the Issue of Liability Under *Monell*.**

The County argues that its Board of Supervisors' alleged lack of control over the Sheriff absolves it of liability, citing cases involving *respondeat superior.* Br. at 16-17. But those cases are not relevant to the current proceeding, which does not involve a claim of *respondeat superior* liability. To the contrary, the County's liability here is direct and springs from *Monell*. In *Goldstein v. City of Long Beach*, 715 F.3d 750, 755 (9th Cir. 2013) cert. denied sub nom. *Cnty. of Los Angeles, Cal. v. Goldstein*, 134 S. Ct. 906, 187 L. Ed. 2d 778 (2014), and *Brewster v. Shasta Cnty,* 275 F.3d 803, 805 (9th Cir. 2001), this Court stated that "[m]erely because a county official exercises certain functions independently of other political entities within the county does not mean that he does not act *for* the county." *Goldstein*, 715 F. 3d at 757 (citing *Brewster*, 275 F.3d at 810) (original emphasis). *See, e.g.*,

---

[3] The County attempts to draw a distinction between the award of injunctive relief as the sole remedy in the present case and the award of monetary damages, which the County concedes it would be obligated to pay. There is no difference, and the County's concession spells the failure of its appeal. The injunctive relief ordered against the Sheriff and MCSO must be financed by the County, pursuant to the same statutes that the County cites. A.R.S. § 11-444(A) (County must provide "actual and necessary expenses incurred by the sheriff . . . for transacting all civil or criminal business"). Adding the County as a party, in lieu of MCSO, will help ensure the enforcement of the injunctive relief that this Court has already affirmed.

14

*Puente Arizona v. Arpaio*, No. CV-14-01356-PHX-DGC, 2015 WL 1432674, at *2 (D. Ariz. Mar. 27, 2015) ("Contrary to the County's argument, a county's lack of control over a sheriff is not dispositive of its liability for his law-enforcement decisions under § 1983.").

In any event, notwithstanding "internal dispute[s] within the County" (SER513), which are of the type that exist within any government, Maricopa County and its Board of Supervisors do exercise supervision over the Maricopa County Sheriff. *Fridena* 504 P.2d at 61 ("Inasmuch as the Sheriff is a county officer under A.R.S. § 11-401 subsec. A, par. 1. the County exercises supervision of the official conduct of the Sheriff."). The County's Board of Supervisors retains the power to require reports from county officers, including the Sheriff, and to remove and replace them for failure to perform that duty. A.R.S. § 11-253.[4] *See also* A.R.S. § 11-251(1) (the County, through the Board of Supervisors, may "[s]upervise the official conduct of all county officers and officers of all districts and other subdivisions of the county charged with assessing, collecting, safekeeping, managing or disbursing the public revenues, see that such officers

---

[4] "The board may require any county officer to make reports under oath on any matter connected with the duties of his office, and may require the officer to give such bonds or further bonds as may be necessary for the faithful performance of his respective duties. An officer who neglects or refuses to make the report, or to give the bond within ten days after being so required, may be removed from office by the board and the office declared vacant. The board may then fill the vacancy." A.R.S. § 11-253.

faithfully perform their duties and direct prosecutions for delinquencies, and, when necessary, require the officers to renew their official bonds, make reports and present their books and accounts for inspection"); *id.* § 11-201(A)(6) (the county determines the budget of the Sheriff); *id.* § 11-444(A) (the county need provide only for "actual and necessary expenses incurred by the sheriff in pursuit of criminals, for transacting all civil or criminal business and for service of all process and notices"); *id.* § 11-444(B)-(C) (the Board meets monthly to allocate funds to the sheriff for the payment of such expenses and the sheriff shall "render a full and true account of such expenses" every month to the Board); *id.* § 11-251(25) (the county may "[a]uthorize the sheriff to offer a reward . . . for information leading to the arrest and conviction of persons charged with crime"); *id.* § 11-251(26) (the county may "[c]ontract for the transportation of insane persons to the state hospital or direct the sheriff to transport such persons").

The County relies on *Grech v. Clayton County, Georgia*, 335 F.3d 1326 (11th Cir. 2003) (en banc), for the propositions that "local governments [such as counties] can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control" (emphasis removed), and that "[a] sheriff's policy or practice cannot be said to speak for the county because the county has no say about that policy or practice." Br. at 17 (citing *Grech*, 335 F.3d at 1331, 1347). These dicta do not appear in any opinion for the majority of that

court. *Grech*, 335 F.3d at 1347 n.46 (noting that the narrower concurring opinion by Anderson, J. represents the actual holding of the court, given the lack of any majority opinion), 1350 (Barkett, J., concurring for six of twelve judges as to Part I of her opinion). In any case, *Grech* (in addition to being non-binding on this Court) is very different from this case. First, the plurality in *Grech* relied on an analysis of Georgia's statutes, Constitution and case law to argue that, in Georgia, sheriffs are considered final law enforcement policymakers for the State of Georgia, rather than for Clayton County. *Id*. at 1332-44. That is not the case in Arizona, where, under Arizona's Constitution and statues, as interpreted by the Arizona Court of Appeals in *Braillard* and *Flanders*, and the numerous Arizona district court decisions that have considered this issue, *supra* at 12-14, the Sheriff is the final law enforcement policymaker for Maricopa County.

Second, in *Grech*, the only thing that all three opinions agreed on, and therefore the true holding of the case, was that the specific program at issue, the Clayton County sheriff's submission of information for a *state* database, was a "well-defined record-keeping function on behalf of *the state*," as opposed to the county, and did not implicate a county area of responsibility. *Id*. at 1350-51 (emphasis added); *see also id*. at 1351 n.2 ("For example, among other things, the state itself is charged with auditing the [database] and has the authority to correct erroneous entries and impose sanctions for non-compliance."). In the present case,

in contrast, the constitutional violations of Sheriff Arpaio and of MCSO with respect to traffic stops and racial profiling involve a county area of responsibility, for which the Sheriff exercises the County's complete authority and discretion and therefore acts as the County's final policymaker. *Cf. Id*. at 1351. With respect to the policies and practices at issue in this case, Sheriff Arpaio is not subject to audit or review by the State of Arizona. Sheriff Arpaio speaks and decides for the County with respect to the law enforcement policies and practices at issue in this case. *Grech* is therefore inapposite.

## III. No Due Process Violation Results From the County's Liability For Its Sheriff's Constitutional Violations And Its Being Bound By the Judgments Against the Sheriff.

### A. The Law Of The Case and Other Preclusion Doctrines Apply.

In this lawsuit, Sheriff Arpaio has always been a named party in his official capacity as the Sheriff of Maricopa County. SER332-333. ". . . [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Ctr. For Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (dismissing a duplicative official-capacity defendant). The County, as the relevant government entity, has therefore always been effectively a party to this lawsuit, even during the period that it was nominally not a party, and has always been (and still is) liable, under Arizona state law, for the costs of the Sheriff's compliance

with his constitutional and other legal obligations, including the Sheriff's compliance with the orders of the District Court.

The law of the case doctrine, along with other preclusion doctrines, therefore bars the County's relitigation of the issues previously decided in this case. The law of the case doctrine states that "an issue once determined by a competent court is conclusive." *Arizona v. California*, 460 U.S. 605, 619 (1983) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979); *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353 (1876)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Arizona v. California*, 460 U.S. at 619 (citing *Montana*, 440 U.S. at 153–154). The law of the case doctrine also specifically provides that "the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (citation omitted). The County may not now further contest the injunctive relief that this Court previously affirmed in this very case. This Court's prior affirmance is the law of the case as to the validity of the Supplemental Injunction. The County, through its component non-jural entity, MCSO, and its principal law enforcement official,

19

Sheriff Arpaio, have had a full and fair opportunity to litigate this case at great length and cost to both parties and to the courts. There is no basis for revisiting this Court's previous ruling now. *See Hoptowit v. Spellman*, 753 F.2d 779, 781 (9th Cir. 1985) (holding district court need not reopen the record before issuing order on remand, where officials named in the complaint were succeeded by other persons prior to remand).

Even if the instant appeal were not in the same litigation as the earlier appeal decided by this Court, other preclusion doctrines independently would bar the County's attempted relitigation of the earlier decided issues, since the County is at the very least in privity with the Sheriff. "Collateral estoppel applies not only against actual parties to prior litigation, but also against a party that is in privity to a party in previous litigation." *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). "Privity exists when there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983). Identity of interest can be established in a number of ways, but it is determinative that "[a]n action against a government officer in her official capacity is ordinarily equivalent to an action against the government entity itself." *Normandeau v. City of Phoenix*, 516 F. Supp. 2d 1054, 1070 (D. Ariz. 2005) (judgment for Motor Vehicle Division served to bind plaintiff in a later suit against Director of Motor Vehicle Division in her

official capacity); *see also Tait v. W. Maryland Ry. Co.*, 289 U.S. 620, 626 (1933) (judgment against the Commissioner of Internal Revenue in his official capacity bound the United States in a later suit). Here, there is identity of interest between the County and the Sheriff, for the same reason. The County may not relitigate any issues of law or fact that have already been actually adjudicated against the Sheriff.

### B. The County's Participation In the Litigation Makes The Preclusion Fair.

The County argues that this Court joined the County *sua sponte* after some five and a half years of intervening progress in the litigation, and that it is therefore unfair to bind it to the rulings issued during its formal absence. Br. at 18-19. As a factual and legal matter, the County's argument fails.

Under settled law, the question is whether the joined party received notice and an opportunity to respond. *Flanders*, 54 P.3d at 847; *see also Kentucky*, 473 U.S. at 166. And as set forth above, in this case the County not only effectively participated in this action through MSCO and Sheriff Arpaio, but it also separately and through its own attorneys received ample notice of this action and had ample opportunity to be heard. The County was originally named as a Defendant along with Sheriff Arpaio, and the County participated in the litigation as a formal party for nearly two years before being dismissed pursuant to its stipulation, without prejudice as to re-joinder. ER00699-717. Subsequently, attorney Tom Irvine appeared on a discovery matter in 2010. SER521-577. Its Director of General

Litigation Services, Wade Swanson, observed a February 4, 2010 hearing in this case. SER226. Its attorney David Selden appeared in this lawsuit in August 2010 regarding appointment of counsel for the Sheriff. SER328-331. The County appointed Tom Liddy of the Maricopa County Attorney's Office as the Sheriff's attorney, and Mr. Liddy remained as co-counsel to the Sheriff through trial and the Sheriff's appeal. SER353-357; SER509-510; SER467-470 at 5:21-6:9, 8:16-9:3; SER254-317; SER200. As attorney for the County, Mr. Selden has remained on the District Court's electronic service list since August 2010, thereby receiving all papers filed by or with the Court. ER00688-689

The County thus had notice and opportunity to be heard as to every event in the District Court relevant to this appeal, so that it can and should be held liable as "the public entity that the official [*i.e.*, Sheriff Arpaio] represents, *whether or not that entity is joined as a party.*" *Flanders*, 54 P.3d at 847 (emphasis in original); *Kentucky*, 473 U.S. at 165-66 (citing *Monell*, 436 U.S. at 690, n.55). An injunction properly runs against those who have received "actual notice of it" and are in privity with the party who has committed the wrong. *See* Fed. R. Civ. P. 65(d)(2); *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13-14 (1945). Such privity exists here. *Supra* at 20-21.

The County relies on *Taylor v. Sturgell*, 553 U.S. 880 (2008), to argue that the County "cannot be bound by any of the District Court's rulings rendered in its

absence." Br. at 18-19. As noted above, unlike the case in *Sturgell*, the County was never absent from the lawsuit. Through its own attorneys and through its officer and decision-maker, the Sheriff, who is named in his official capacity, the County in fact has always been present in this lawsuit, which should "be treated as a suit against the entity [i.e., the County]," with "the real party in interest [being] the entity." *Kentucky*, 473 U.S. at 166.

But, even if the County had actually been absent, *Sturgell* would not support the County's desired result. In *Sturgell*, a litigant sought documents from an agency under the Freedom of Information Act, after the litigant's friend had failed in obtaining those same records; "[t]he two men [had] no legal relationship, and there [was] no evidence that [the litigant] controlled, financed, participated in or even had notice of [his friend's] earlier suit." *Sturgell*, 553 U.S. at 885. The Supreme Court's disapproval in *Sturgell* of the doctrine of preclusion by "virtual representation" has no application to the very different facts of this case.

First, *Sturgell* explicitly recognizes that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment." *Id*. at 894 and n. 8 (noting two uses of the term "privity" in this context). The Arizona decisional, constitutional and statutory authorities cited above, *supra* at 12-17, and the resulting liability of the County under *Monell* for the Sheriff's unconstitutional

policies and practices, establish just such a legal relationship between the Sheriff
and the County.

Second, because the Sheriff had at least as great an incentive to defend those
policies and practices as anyone else in the County government, *Sturgell* also
recognizes the propriety of precluding the County as a nonparty who "was
'adequately represented by someone with the same interests who [wa]s a party' to
the suit." *Id*. at 894 (*quoting Richards v. Jefferson County*, 517 U.S. 793, 798
(1996).

Third, *Sturgell* further explicitly recognizes that a person who has
"'assume[d] control' over the litigation in which th[e] judgment was rendered" and
therefore has had the opportunity to present proofs and argument . . . has already
had his day in court even though he was not a formal party to the litigation." *Id.* at
895 (internal quotation marks and citation omitted). The County, even after its
dismissal, had attorneys appear for it in the litigation to discuss the production of
MSCO documents and the appointment of attorneys for Sheriff Arpaio. SER060-
061; SER176; SER177-198; SER199-218; SER219-235; SER236-253; SER318-
327; SER328-331; SER462-497; SER498-520. The County paid for the Sheriff's
defense and even asserted its right to control that defense. SER205-206 (ECF No.
366 at 7 ("Only the County has authority by statute to appoint counsel for the
Sheriff, and the County responsibly did so by the creation of the Office of Special

Litigation Services and its appointment of counsel for the Sheriff in this and other cases."), and at 8 (". . . the Sheriff's litigation expenses in this case are being paid by the County's general fund.")). The Sheriff's County-appointed attorney affirmed that the County was controlling the litigation, including by selecting counsel. SER254-255. The County therefore had ample opportunity to raise, during those proceedings, any and all arguments and evidence that it might have wanted to submit. The application of preclusion to it is fully consistent with *Sturgell*.

For all these reasons, the County has suffered no due process violation resulting from its substitution as a party, nor from being bound by the injunctive measures imposed by the District Court and affirmed by this Court.

The County notes an "adversity" between the County and the MCSO, but this does not permit it to escape the effect of the prior adjudications. Br. 20-21. The Sheriff filed a motion for an order to show cause why the County should not be sanctioned for a discovery failure and the County filed a sanctions motion against the Sheriff on the same issue. SER199-218. The County and Sheriff also for a time disagreed over the selection and payment by the County of the Sheriff's counsel. This "adversity" was an "internal dispute within Maricopa County." SER513 at 16:22, which did nothing to change the dispositive fact that Sheriff Arpaio

remained the County's decision-maker for law enforcement and that, under

*Monell*, the County was liable for the Sheriff's actions.[5]

### C.    The County Waived Any Right to Object to Its Re-Joinder.

An additional reason that this Court should not consider the substance of this

appeal is that the County waived its right to contest its re-joinder in this litigation

when it signed a stipulation that it could be re-joined if that would be necessary to

obtain full relief. ER00586 (stipulation that the County's dismissal was "without

prejudice to rejoining [the County] as a Defendant in this lawsuit at a later time if

doing so becomes necessary to obtain complete relief."). That stipulation negates

the County's ability to make the effectively contrary arguments in Sections I and II

and to reargue the previously decided issues discussed in Section III of its brief.

---

[5] Plaintiff's had previously argued that, by asserting rights against the County, MCSO had intentionally waived the right to argue that it was not a jural entity. This Court nonetheless reached the issue in its earlier decision. Plaintiffs have always contended as a substantive matter that the County is liable for the Sheriff's and MCSO's unconstitutional policies and should be bound by the prior adjudications against the Sheriff. (In that regard, Plaintiffs note a typographical error in their September 14, 2015 Reply Brief in Support of Motion to Dismiss Appeal of Maricopa County, Arizona, Dkt. 17-1. On page 7 of that brief, which is page 12 of 19 in the electronic docket, on the eighth line, "'no,'" should be "'yes.'")

**IV.    The Abstract Issues Raised By The County In Sections I and II Of Its Brief Are Not Ripe For Resolution By This Court.**

In Section I of its brief, the County contends that it has no liability for unconstitutional acts of the Sheriff. Section II argues that the County cannot be bound by the trial court's orders issued while the County was not a formal party. These are no more than abstract arguments over propositions of law, as the County does not assert that any order of the District Court should be reversed based on those arguments. Br. at 12-22. There is no right to appeal an abstract proposition of law that is not associated with any final district court order. This Court's jurisdiction is limited to appeals of final decisions by the district courts (and a small class of collateral orders). 28 U.S.C. § 1291; *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (setting forth conditions for collateral order appeal). "For adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions, are requisite." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014), *cert. denied sub nom., ProtectMarriage.com-Yes on 8 v. Padilla*, 135 S. Ct. 1523 (2015) (internal quotations omitted). Sections I and II of the County's argument are mere abstractions, and for this reason they do not present a ripe controversy.

The County has petitioned the Supreme Court to consider *this* Court's ruling substituting the County for MCSO and thereby, the County contends, binding the County to comply with the District Court's previous orders. ER00004. That

27

petition remains pending, and has been opposed by Plaintiffs-Appellees. SER001-045; SER580. Additional action on that issue by this Court, in the absence of any additional action by the District Court, is not warranted. *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) ("The ripeness inquiry is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.") (internal quotes omitted).

Sections I and II of the County's brief appear to be aimed instead at future "affirmative mandates" for remedial measures, which the County now anticipates will be directed at the County. Br. at 25-26. But this Court has no jurisdiction to render advisory opinions over district court orders that have not yet been issued. *United States v. Gila Valley Irrig. Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994) (refusing to rule on issue because "it would be an advisory ruling on an issue which is not yet ripe, and may never ripen into a controversy."); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580–581 (1985)). To the extent the County now seeks this Court's views on potential injunctive relief to be granted in the future, those issues are not ripe for review, and this Court should decline to consider them.

**V.    The Injunctive Relief Previously Affirmed by This Court Was Within the District Court's Discretion.**

Section III of the County's brief concerns certain provisions in the District Court's October 3, 2013 Supplemental Injunction. Br. 23-24 (listing 12 categories). That portion of the County's appeal is time-barred and precluded for the reasons discussed above and in Plaintiff's earlier motion to dismiss, including the law of the case doctrine. But, even if this Court were again to consider that injunction on its merits, it should again affirm for all the reasons already stated in its previous order. *See Melendres*, 784 F.3d at 1260-67.

The County relies on *Rizzo v. Goode*, 423 U.S. 362 (1976), arguing that *Rizzo* supports striking down all of the Supplemental Injunction's affirmative mandates. Br. at 22-26 and n.6. This argument fails because the present case is nothing like *Rizzo*, where "there was no affirmative link between the occurrence of the various instances of police misconduct and the adoption of any plan or policy by [defendants] express or otherwise showing their authorization of approval of such misconduct." 423 U.S. at 371. Indeed, "none of the [named defendants, in contrast to unnamed officers] had deprived the respondent classes of any rights secured under the Constitution." *Id.* at 377. Here, in contrast, the District Court found the Sheriff's *policies*, including the "LEAR" policy, to be unconstitutional. ER00184-325, *e.g.* at ER00185, ER00298-314. Pursuant to agency policy, MCSO erroneously trained all 900 of its deputies so that they would continue to detain

individuals for suspected unauthorized presence in the United States even after they had lost the authority to do so, and so that they would improperly consider race as an indicator of unauthorized presence (ER00184-186). MCSO had no general written policy or training concerning racial profiling (ER00220-221) and MCSO command took no steps to evaluate personnel for signs of racial profiling or discipline violations (ER00282). Unlike the case in *Rizzo*, MCSO's unconstitutional policies and practices, originating from the County's chief law enforcement officer himself, justified the District Court's injunctive measures. *See generally* ER00184-325.

Other facts demonstrate that the District Court properly exercised its discretion in issuing the Supplemental Injunction. The District Court issued its Supplemental Injunction after making detailed findings of fact after a bench trial, and after MCSO had failed to comply with preliminary orders that this Court has upheld. ER00184-325, *e.g.*, at ER00188-189, ER00292-298. The District Court invited Defendants to participate in the crafting of a remedy and granted the parties' requests for time to attempt to negotiate an agreed remedial decree before issuing the Supplemental Injunction. ER00323 (ECF No. 579 at 140); SER422-461 at SER427-428, SER440-442. The parties jointly filed a proposed order in which Defendants agreed to many of the provisions the County now opposes, SER086-175. Defendants submitted further briefs stating their objections to other

provisions. SER062-085. The County, through its component non-jural entity MCSO and its chief law enforcement policymaker, Sheriff Arpaio, had had a full and fair opportunity to litigate each and every provision it now (again) seeks to challenge.[6] The County had the same opportunity through its attorney Mr. Selden. To the extent it wished to assert positions different from those taken by the MCSO or Sheriff Arpaio, it should have done so first in the District Court and then during their earlier appeal. The County's untimely request to reopen these matters should be denied for this reason as well.[7]

The County's list of 12 categories of allegedly improper injunctive relief, Br. at 23-24, fails to specify by number which paragraphs of the District Court's actual orders it alleges exceeded the District Court's authority, which makes it hard to

---

[6] Similar injunctive provisions have been ordered by federal courts in analogous cases. *See, e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 276, 286 (1977) (training for teachers and administrators as part of injunctions in school desegregation case); *Armstrong v. Davis*, 275 F.3d 849, 858-59 (9th Cir. 2001) (initial evaluation of policies and procedures, new policies and procedures, and new training for prison officers); *United States v. City of Parma, Ohio*, 661 F.2d 562, 577 (6th Cir. 1981) ("educational programs" for employees are "common" in pattern or practice suits); *Floyd v. City of New York*, 959 F. Supp. 2d 668, 677-84 (S.D.N.Y. 2013) (reforms to police department policies, training, supervision, monitoring, discipline, and documentation).

[7] Plaintiffs-Appellees argue here in support of the existing injunctive measures of the October 3, 2013 Supplemental Injunction, as amended. Any additional relief that may be ordered in the future by the District Court, based on new evidence and findings, including any relief ordered as a result of the ongoing contempt proceeding, are not now at issue.

31

find any merit to its appeal. The County's broad objection to "all affirmative mandates in the injunctive orders entered by the district court," Br. at 25, is even more amorphous and is equally unmeritorious. The new training and policies and the new procedures to assure compliance and detect the recurrence of the earlier constitutional violations are all fully justified by the evidence and findings of the District Court and lie within the District Court's discretion to mandate. *See Melendres*, 784 F.3d at 1260-67.

## CONCLUSION

The County's appeal is barred by untimeliness and the law of the case. Its claims not to be liable for the policies of its Sheriff and not to be bound by the judgments against the Sheriff fail in light of federal law under section 1983 and Arizona state law describing the County's relationship with the Sheriff. Those claims are also not ripe. On the merits, the District Court neither clearly erred in any findings of fact, nor abused its discretion in issuing its injunctive remedies.

For all these reasons, the County's appeal should be dismissed. In the alternative, the District Court's orders, as earlier amended, should be affirmed.

Dated: December 21, 2015

By: */s/ Stanley Young*
Stanley Young
syoung@cov.com
Michelle L. Morin
mmorin@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Dan Pochoda
dpochoda@acluaz.org
ACLU FOUNDATION OF
ARIZONA
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376

Anne Lai
alai@law.uci.edu
401 E. Peltason, Suite 3500
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066

Cecillia D. Wang
cwang@aclu.org
ACLU FOUNDATION
Immigrants' Rights Project
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Andre Segura
asegura@aclu.org
ACLU FOUNDATION
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Jorge Martin Castillo
jcastillo@maldef.org
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

*Attorneys for Plaintiffs-Appellees*

34

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), I certify that this brief complies with the type-volume limitation. Based on the word count function of the word-processing system used to prepare the brief, this brief contains 8,638 words, excluding the caption, tables, signature blocks, and certificates.

Date: December 21, 2015                    /s/    *Stanley Young*
                                                Stanley Young

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: December 21, 2015                    */s/    Stanley Young*
                                                           Stanley Young

## STATEMENT OF RELATED CASES

The following cases are related. All arise out of the same District Court case:

*Melendres et al. v. Arpaio*, Case No. 13-16285 (Pending, writ of certiorari filed); *Melendres et al. v. Arpaio*, Case No. 13-17238 (Pending, consolidated with No. 13-16285). *See* Melendres v. Arpaio, 695 F.3d 990, 994 (9th Cir. 2012) ("*Melendres I*") (affirming District Court's pre-trial preliminary injunction); *Melendres v. Arpaio*, 784 F.3d 1254, 1259-60 (9th Cir. 2015) ("*Melendres II*") (affirming, in large part, the District Court's supplemental permanent injunction and substituting Maricopa County for Maricopa County Sheriff's Office as the proper jural entity).

*Melendres et al. v. Arpaio v. Dennis Montgomery (Putative Intervenor)*, Case No. 15-16440 (Pending); *Melendres et al. v. Arpaio v. Dennis Montgomery (Putative Intervenor)*, Case No. 15-16626 (Pending, consolidated with No. 15-16440). Appeal from District Court's denial of motions for *pro hac vice* admission of Mr. Montgomery's attorneys.

*In re: Dennis L. Montgomery v. U.S. District Court v. County of Maricopa*, Case No. 15-71433 (Terminated). Petition by putative intervenor Dennis Montgomery for mandamus relief, seeking recusal of the District Court and stay of proceedings. (Denied on May 12, 2015).

*Melendres et al. v. Zullo (Movant-Appellant) v. Maricopa County and Joseph Arpaio*, Case No. 15-17269 (Pending). Appeal by non-party witness Michael Zullo from District Court denial of Mr. Zullo's motions for protective order and motion for extension of time to retain counsel, and from discovery order issued against counsel for Defendant Sheriff Arpaio).

*In re Arpaio and Sheridan v. Dennis Montgomery v. Melendres et al.*, Case No. 15-72440 (Terminated). Petition by Defendants Sheriff Arpaio and Chief Deputy Sheridan for mandamus relief, seeking recusal of the District Court and stay of proceedings. (Denied on Sept. 15, 2015).

Date: December 21, 2015                    /s/      *Stanley Young*
                                           Stanley Young

37