# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANUEL DE JESUS ORTEGA MELENDRES; et al., | No. 15-15996 |
| Plaintiffs/Appellees, | |
| v. | Arizona District Court No.: 2:07-CV-02513-GMS |
| MARICOPA COUNTY, ARIZONA, | |
| Defendant/Appellant, | |
| And | |
| JOSEPH M. ARPAIO, | |
| Defendant. | |

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

_____

### DEFENDANT/APPELLANT MARICOPA COUNTY,
### ARIZONA'S REPLY BRIEF
_____

Richard K. Walker, SBN 004159
**WALKER & PESKIND, PLLC**
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236
*rkw@azlawpartner.com*
Phone: (480) 483-6336
Facsimile: (480) 483-6337
*Counsel for Defendant/Appellant Maricopa County, Arizona*

# **TABLE OF CONTENTS**

LEGAL ARGUMENT……………………………………………….…………..1

I.    THE COUNTY COMPLIED WITH RULE 4 OF THE FEDERAL RULES OF APPELLATE PROCEDURE ONCE ITS APPELLATE RIGHTS ACCRUED……………………………………………………1

II.    PLAINTIFFS-APPELLEES FAIL TO ACKNOWLEDGE THE SUPREME COURT'S INSTRUCTIONS IN *McMILLIAN v. MONROE COUNTY*, 520 U.S. 781 (1997), AND THEY IGNORE THE CRITICAL NATURE OF LACK OF CONTROL TO A *McMILLIAN* ANALYSIS…………………………………………….4

III.    PLAINTIFFS-APPELLEES HAVE ADVANCED NO BASIS ON WHICH THE COUNTY COULD BE BOUND BY THE DISTRICT COURT'S ORDERS WITHOUT INFRINGING ON THE COUNTY'S RIGHT TO DUE PROCESS…………………....…..14

IV.    THE ISSUES IN THIS APPEAL REFLECT LIVE CONTROVERSIES, NOT "ABSTRACT ISSUES" NOT YET RIPE FOR REVIEW………………………………………………17

V.    PLAINTIFFS-APPELLEES HAVE FAILED TO SHOW HOW THE DISTRICT COURT'S INJUNCTIVE WITHOUT OFFENDING THE TENTH AMENDMENT AND THE GUARANTEE CLAUSE…...18

CONCLUSION…………………………………………………………..…20

# TABLE OF AUTHORITIES

## CASES

*Arizona v. U.S.*, 132 S.Ct. 2492 (2012)…………………………………………..6,7

*Braillard v. Maricopa County*, 232 P.3d 1263 (Ariz. Ct. App. 2010)……..……2

*Center for Bio-Ethical Reform v. L.A. County Sheriff's Dept*., 533 F.3d 780 (9th Cir. 2008)………………………………………………………………………….14

*Chase  Natn'l Bank v. Norwalk*, 291 U.S. 431 (1934)…………………....…..2

*Grech  v.  Clayton  County,  Georgia*, 335 F.3d 1326 (11th Cir. 2003) (en banc)…………………………………………………………………..…10, 11

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)………………………………………..18

*Hart v. Bayless Investment & Trading Co*., 86 Ariz. 379, 346 P.2d 1101 (Ariz. 1959)………………………………………………………………………………..8

*Hounshell v. White*, 220 Ariz. 1, 202 P.3d 466 (App. 2008)………………..…….12

*Kentucky v. Graham*, 473 U.S. 159 (1985)………………………..……….13, 14

*McMillian  v.  Monroe  County,  Alabama,*  520  U.S.  781 (1997)…………………………………………… 4, 5, 7, 9, 10, 11, 12, 13, 14, 20

*Melendres  v.  Arpaio*,  784  F.3d  1254  (9th  Cir.  2015)  ("*Melendres II*")……………………………………….….……………….…2, 3, 6, 7, 15

*Mohave County v. Mohave-Kingman Estates, Inc.,* 120 Ariz. 417, 586 P.2d 978 (1978)…………………………………………..………………………..…8

*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)………..…………….…..4

*Mora v. Arpaio*, 2011 WL 1562443 (D. Ariz. 2011)………….…………………5

*Puente, Arizona v. Arpaio*, 76 F.Supp.3d 833 (D. Ariz. 2015)…….………...…….5

*Rizzo v. Goode*, 423 U.S. 362 (1976)……………………………..….….18, 19

*Smalley v. Contino*, 2013 WL 858103 (D. Ariz. 2013)…………..……...………..5

*Squaw Valley Development Co. v. Goldberg*, 395 F.3d 1062 (9th Cir. 2005)………………………………………………………………..3

*State Board of Control v. Buckstegge*, 18 Ariz. 277, 158 P. 837 (Ariz. 1916)…………………………………………….………8

*Taylor v. Sturgell*, 553 U.S. 880 (2008)……………………………..15

*Territory v. Gaines,* 11 Ariz. 270, 93 P. 281 (Ariz. Terr. S.Ct. 1908)..……..…….8

*Turquitt v. Jefferson County*, 137 F.3d 1285 (11th Cir. 1998) (en banc)………………………………………………...………….11

*U.S. v. Arizona*, 915 F.Supp.2d 1073 (D. Ariz. 2012)…………………..………5

## STATUTES

A.R.S. § 11-201………………………………………...………..8

A.R.S. § 11-251(1)………………………………..…………12

iii

42 U.S.C. § 1983…………………………………………………...………5, 11, 13

**RULES**

Federal Rules of Appellate Procedure, Rule 4………………………………..1, 4

Supreme Court of Arizona Rule 42, ER 1.8(f)………………………...……………16

**OTHER AUTHORITIES**

Arizona Senate Bill 1070, § 6…………………………………………………6

## I. THE COUNTY COMPLIED WITH RULE 4 OF THE FEDERAL RULES OF APPELLATE PROCEDURE ONCE ITS APPELLATE RIGHTS ACCRUED.

According to Plaintiffs-Appellees, Rule 4 of the Federal Rules of Appellate Procedure stands as an absolute, immutable bar to the appellate rights of individuals or entities that are not parties to litigation in the district court at the time of the entry of judgment or orders when they are later involuntarily made parties to the action. This places a premium on prescience that the Rules and notions of fundamental fairness and due process simply will not bear.

Maricopa County ("the County") was dismissed – with the full concurrence of Plaintiffs-Appellees – in October of 2009, almost three years before trial, and over four years before the district court issued the first of its orders that are the subject of this appeal. If the County is to be bound in any sense by those orders, it must have the opportunity to challenge them on appeal. As a non-party at the time the orders were issued, the County's appellate rights did not accrue, and no time limit on assertion of those rights was triggered.

Plaintiff-Appellees argue: "Had the County wished to contest any of the challenged District Court judgments, *it could have intervened* to assert a timely appeal after those judgments were issued, regardless of whether the County was, at those times, named as a formal party." Brief for Plaintiffs-Appellees ("Opp. Br.")

1

at 11 (citation omitted) (emphasis added). Put another way, the County should have been able to anticipate, despite having not been a party to the case for years and despite the fact that the district court's orders contained no findings of any wrong-doing on the part of the County (as distinguished from the Sheriff and MCSO), that it *might* someday be hauled back into the case and must intervene and lodge an appeal to protect against that contingency, or have its right to challenge orders to which it *might* someday be made subject be forever extinguished. This is patent nonsense. It also overlooks the well-established general rule that "[t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger." *Chase Natn'l Bank v. Norwalk*, 291 U.S. 431, 441 (1934).

It must also be remembered that it was the choice of Plaintiffs-Appellees to dismiss the County out of the case as unnecessary, it was the choice of Plaintiffs-Appellees not to seek the County's re-joinder at any time prior to the issuance of the district court's orders that are the subject of this appeal, and it was the choice of Plaintiffs-Appellees not to move this Court to re-join the County in *Melendres II*. The Arizona Court of Appeals decision in *Braillard v. Maricopa County*, 232 P.3d 1263 (Ariz. Ct. App. 2010), cited repeatedly in Plaintiffs'-Appellees' brief, and by this Court in *Melendres II* in support of its conclusion that the Maricopa County

2

Sheriff's Office is a non-jural entity and, therefore, had been improperly named as a party (*Melendres II*, 784 F.3d at 1260), was decided in May of 2010. This was almost *four years* prior to the latest of the district court orders appealed from here. Plaintiffs-Appellees knew that the issue of MCSO's status as a non-jural entity had previously been raised in this case, and they were certainly aware that it was being pressed by the Sheriff and MCSO in the *Melendres II* appeal. They thus had ample opportunity to seek the County's re-joinder if they thought the *Braillard* decision necessitated their seeking to bring the County back into the case as a party. Their failure to do so prior to the appeal in *Melendres II* waived any right they may have had to assert that the County should be re-joined. *See, e.g., Squaw Valley Development Co. v. Goldberg*, 395 F.3d 1062, 1063-63 (9th Cir. 2005) (issue not raised below or in party's opening brief is foreclosed and will not be considered). If anyone had an affirmative obligation to anticipate the consequences of a dismissal of MCSO as a non-jural entity and do something to trigger the County's appellate rights at, before, or even after the time of the orders here in issue, it was Plaintiffs-Appellees, not the County.

Until this Court issued its decision in *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) ("*Melendres II*"), the County's appellate rights with respect to the district court's orders did not accrue, and the County's Notice of Appeal was filed

3

within 30 days thereafter in full compliance with Rule 4.  This Court clearly has jurisdiction over this appeal.

**II. PLAINTIFFS-APPELLEES FAIL TO ACKNOWLEDGE THE SUPREME COURT'S INSTRUCTIONS IN *McMILLIAN v. MONROE COUNTY*, 520 U.S. 781 (1997), AND THEY IGNORE THE CRITICAL  NATURE OF LACK OF CONTROL TO A *McMILLIAN* ANALYSIS.**

Plaintiffs-Appellees assert that the County is necessarily liable for the acts of the Maricopa County Sheriff under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), regardless of whether, under Arizona law, the County has any meaningful control over the Sheriff's policies and practices.  Opp. Br. at 11-18. Remarkably, the Supreme Court's decision in *McMillian v. Monroe County*, 520 U.S. 781 (1997), receives only passing mention in Plaintiffs'-Appellees' articulation of this argument, and the *McMillian* Court's instructions as to the analysis required for a determination regarding whether a Sheriff's actions are imputable to the County are, at most, addressed only indirectly in the discussion of lower court cases.

The starting point for Plaintiffs-Appellees is to take as a given that "the County is liable for Sheriff Arpaio's law enforcement policymaking."  Opp. Br. at 13 (citations omitted).  This, of course, is not a starting point, but an endpoint that requires, as the *McMillian* decision makes clear, careful analysis to be reached, if it

4

can be reached at all. In support of this conclusory proposition, Plaintiffs-Appellees cite four district court decisions, none of which reflect any more than superficial analysis of *McMillian* and the factors it requires to be assessed any time liability for the actions of a Sheriff is sought to be imputed to a County. *See id*. at 13-14, and cases there cited.[1]

One of the key points made by the Supreme Court in *McMillian*, but ignored by Plaintiffs-Appellees here, is that:

> Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policy makers for the local government *in a particular area, or on a particular issue*.

*McMillian*, 520 U.S. at 785 (citation omitted) (emphasis added).

As this Court observed in *Melendres II*, the actions of the Sheriff and MCSO at issue in this case were taken "under the auspices of enforcing *federal and state*

---

[1] In fact, two of the cases cited by Plaintiffs-Appellees, *Smalley v. Contino*, 2013 WL 858103 (D. Ariz. 2013), and *Mora v. Arpaio*, 2011 WL 1562443 (D. Ariz. 2011), contain no mention of *McMillian*. The other two, *Puente Arizona v. Arpaio*, 76 F.Supp.3d 833 (D. Ariz. 2015), and *U.S. v. Arizona*, 915 F. Supp.2d 1073 (D. Ariz. 2012), conclude that the Sheriff is the "final policymaker" for Maricopa County with respect to law enforcement matters (among others) based primarily upon other Arizona and federal court decisions in which a *McMillian* analysis appears to have played little, if any, role, and on factors the Supreme Court in *McMillian* found to provide an insufficient basis for imputing liability to the County in that case, such as the fact that Arizona's Sheriffs are charged under Arizona law with responsibility for enforcing the law and the County is required to pay their expenses. *See, e.g., Puente*, 76 F.Supp.3d at 867.

*immigration laws*." 784 F.3d at 1258 (emphasis added). Thus, under a proper *McMillian* analysis, the questions that must be answered here are whether the County has any policymaking authority with respect to the particular issue of enforcement of federal and State immigration laws and, if so, whether the Sheriff is the County's final policymaker on that issue.

In *Arizona v. U.S.*, 132 S.Ct. 2492 (2012), the Supreme Court held: "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Id*. at 2498. Based on this broad federal power, the Court found that major portions of S.B. 1070, the Arizona Legislature's attempt to address problems within the State arising out of inadequately checked illegal immigration, were preempted by the scheme for regulating immigration erected by Congress. "By authorizing state officers to decide whether an alien should be detained for being removable, § 6 [of S.B. 1070] violates the principle that the removal process is entrusted to the discretion of the Federal Government." *Id*. at 2506.

The central issues below in the present case were whether the Sheriff and MCSO had "a 'custom, policy and practice' of racially profiling Latino drivers and passengers, and of stopping them pretextually under the auspices of enforcing federal and state immigration-related laws," and whether such a policy "extended

to the post-stop investigatory process, resulting in longer and more burdensome detentions for Latinos than for non-Latinos." *Melendres II*, 784 F.3d at 1258. This clearly falls within the very area of activity by State officers that the Supreme Court in *Arizona v. U.S.* found to be violative of "the principal that the removal process is entrusted to the discretion of the Federal Government." 132 S.Ct. at 2506.

Just as the Court found the foray by the Arizona Legislature into such matters to have been preempted by federal law, it necessarily follows that there could be no authority on the part of the County to make policy in this domain reserved exclusively to the national government. If the County had no authority to make policy in this area, it defies logic to say, as Plaintiffs-Appellees claim, that "Sheriff Arpaio is the final policy maker for Maricopa County" with respect to such matters.

Beyond the preemptive effect of federal law, however, it is also clear that the County has no authority under *Arizona* law to make policy in this "particular area, or on [this] particular issue." *McMillian*, 520 U.S. at 785 (citation omitted). It is a principle firmly embedded in Arizona law that the powers of Arizona's counties are derivative, can be exercised only if ceded to them by the Arizona Legislature, and must be exercised only in the manner the Legislature prescribes. *See, e.g.,*

7

*Hart v. Bayless Investment & Trading Co.*, 86 Ariz. 379, 384, 346 P.2d 1101,1105 (Ariz. 1959); *State Board of Control v. Buckstegge*, 18 Ariz. 277, 282, 158 P. 837, 839 (Ariz. 1916).[2]  There has been no law enacted by the Arizona Legislature that could be construed to grant Arizona's counties powers over general law enforcement matters, nor has there been any enactment that conferred any authority on the counties over immigration-related matters.[3]  In light of this lack of authority on the County's part over general law enforcement, and over immigration issues in particular, any attempt by the County to exercise authority by making policy in such areas would be, by operation of Arizona law, "without jurisdiction and wholly void."  *Buckstegge*, 18 Ariz. 277, 282, 158 P. 837 (Ariz. 1916); *see also Mohave County v. Mohave-Kingman Estates, Inc.*, 120 Ariz. 417, 420, 586 P.2d 978, 981 (1978) (same).  The Sheriff simply cannot be said to have been exercising policymaking authority on behalf of the County in an area where the County itself is precluded from making policy.

---

[2]  Indeed, this principle harkens all the way back to the days before Arizona became a State.  *See Territory v. Gaines*, 11 Ariz. 270, 93 P. 281 (Ariz. Terr. S.Ct. 1908)

[3]  The limited powers of Arizona's counties "shall be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law."  A.R.S. § 11-201.

8

The Supreme Court in *McMillian* found important support for its conclusion that Alabama Sheriffs act on behalf of the State, not the counties, when performing law enforcement duties, in the fact that law enforcement authority was conferred by Alabama statute upon the Sheriffs, and not on the counties.

> By this mandate, sheriffs are given complete authority to enforce the state criminal law in their counties. In contrast, the "powers and duties" of the counties themselves – creatures of the State who have only the powers granted to them by the State, do not include any provision in the area of law enforcement. Thus, the "governing body" of the counties – which in every Alabama county is the county commission, cannot instruct the sheriff how to ferret out crime, how to arrest a criminal, or how to secure evidence of a crime.

*McMillian*, 520 U.S. at 790 (citations omitted).

The same is true here, as Plaintiffs-Appellees do not dispute and apparently concede. Just as the *McMillian* Court found that Alabama sheriffs could not be considered policymakers for their clients in carrying out law enforcement functions, in part because their county commissions lacked authority over such matters, Sheriff Arpaio cannot, for the identical reason, be found to have been exercising policymaking authority on behalf of the County with respect to enforcing federal and State immigration-related laws.

Yet Plaintiffs-Appellees insist that the question of whether the County has any meaningful control over the Sheriff's execution of law enforcement duties is "irrelevant" to the issue of whether any liability for the Sheriff's actions in this

9

case can be imputed to the County. Opp. Br. at 14-18. In support of this, they dismiss cases cited by the County holding that its lack of control over the actions of the Sheriff preclude the imputation of liability under a *respondeat superior* theory (Opening Br. at 16-17) as "not relevant to the current proceeding, which does not involve a claim of *respondeat superior* liability." Opp. Br. at 14.

The purpose for which the County cited those cases, however, was to show that both federal and State courts uniformly find Arizona Counties lack control over their Sheriffs and his deputies sufficient to warrant imputation of liability in a tort context. Plaintiffs-Appellees have suggested no reason why lack of control for purposes of declining to impute liability under tort law would be any different from the lack of control that the Supreme Court made a key factor in the analysis prescribed in *McMillian*. *See McMillian*, 520 U.S. at 790-91 ("most importantly" Alabama Sheriffs are given complete authority to enforce State criminal law, whereas Counties have "no direct control over how the sheriff fulfills his law enforcement duty").

The closest Plaintiffs-Appellees come to addressing this aspect of *McMillian* is in their attempt to minimize the significance of the Eleventh Circuit's decision in *Grech v. Clayton County*, 335 F.3d 1326 (11th Cir. 2003) (en banc), holding, *inter alia*, that "[a] sheriff's policy or practice or practice cannot be said to speak for the

county because the county has no say about that policy or practice." *Id*., 335 F.3d at 1347. This and another portion of the court's opinion in *Grech* of similar import quoted by the County, Plaintiffs-Appellees contend, are "dicta that do not appear in any opinion of the majority of that court." Opp. Br. at 16-17. True enough as far as it goes, but there are at least two problems. First, Plaintiffs-Appellees fail to mention that only three of the 12 members of the *en banc* court actually took issue with those aspects of the plurality opinion for the court. *Id.*, 335 F.3d at 1350-64. Second, Plaintiffs-Appellees also fail to acknowledge that the plurality decision in *Grech* on the criticality of control in a *McMillian* analysis drew directly from the Eleventh Circuit's earlier ***unanimous*** *en banc* decision in *Turquitt v. Jefferson County*, 137 F.3d 1285 (11th Cir. 1998) (en banc).

> [L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control. A local government "must have power in an area in order to be held liable for an official's acts in that area."

*Turquitt*, 137 F.3d at 1292 (quoting McMillian) (citation omitted).

Plaintiffs also argue that the County does have effective control over the Sheriff by virtue of: (a) its budgetary authority and the fact that it is required to fund the Sheriff's operations; (b) the fact that the Board of Supervisors can require the Sheriff to file reports and remove him from office if he fails to do so; and (c) the Board of Supervisors is granted authority to "supervise" the official conduct of

11

County officers, including the Sheriff, who are "charged with assessing, collecting, safekeeping, managing or disbursing the public revenues . . . ." A.R.S. § 11-251(1). Neither singly nor collectively do these areas of authority amount to effective control over the Sheriff's actions in the law enforcement arena.

As the Supreme Court itself observed in *McMillian*, the fact the counties supply the funding for sheriffs gives the counties at most "an attenuated and indirect influence over the sheriff's operations." *McMillian*, 520 U.S. at 791-92. The fact that the County is given authority to require Sheriff Arpaio and other County officers to submit reports does not even give it control over the *contents* of those reports (other than to require that they be truthful), let alone the policies and practices otherwise promulgated by those officers. And the authority to "supervise" provided for in A.R.S. § 11-251(1) must be read in context, which makes it applicable to the activities of County officers in "assessing, collecting, safekeeping, managing or disbursing the public revenues."

As the decision on *Hounshell v. White*, 220 Ariz. 1, 202 P.3d 466 (App. 2008), established, Arizona's Counties are without authority to discipline the employees of their Sheriffs for misconduct. Without such authority, the County cannot exert meaningful control to prevent the kind of conduct at issue in this case,

nor can the County effectively require compliance with corrective measures, whether court-ordered or otherwise.[4]

Because the County lacks authority to control the actions of the Sheriff in carrying out his law enforcement duties, and in particular in the area of immigration enforcement, there can be no liability imputed to the County for constitutional wrongs occurring in connection with those actions. *McMillian* teaches that, far from being "irrelevant" as Plaintiffs-Appellees contend, control is key, and § 1983 liability cannot be imputed without it. Especially when it comes to declaratory and injunctive relief, the County cannot be liable for the actions of the Sheriff and his deputies in carrying out law enforcement functions, and the County cannot accordingly be made the subject of equitable relief directed at such actions.

---

[4] This is further illustrated by A.R.S. § 11-251.18, which requires the County boards of supervisors to "adopt procedures for the adoption, amendment, repeal and enforcement of rules." A.R.S. § 11-251.18(A). "Rule" is defined in this statue to mean, *inter alia*, "a county statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of a county." A.R.S. § 11-251.18(J)(2). While this might appear, at first blush, to confer fairly broad authority on the Counties' boards of supervisors, the Arizona Legislature narrowly limited it by providing that the authority does not apply to "[s]ubstantive policy statements." A.R.S. § 11-251.18((I)(2).

### III. PLAINTIFFS-APPELLEES HAVE ADVANCED NO BASIS ON WHICH THE COUNTY COULD BE BOUND BY THE DISTRICT COURT'S ORDERS WITHOUT INFRINGING ON THE COUNTY'S RIGHT TO DUE PROCESS.

Plaintiffs-Appellees contend that, despite the dismissal of the County from the case in 2009, binding it to orders issued after its dismissal on a record it had no role in forming would, pose no due process problem. Quoting *Kentucky v. Graham*, 473 U.S. 159 (1985), Plaintiffs-Appellees assert that Sheriff Arpaio's participation in this case as a Defendant named in his official capacity means that, despite the County's stipulated dismissal, it actually continued to be a party all along because ". . . [A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*, 473 U.S. at 166 (citation omitted). This begs the question, however, because *McMillian* instructs that, in a case like this, the identification of "the entity" requires careful analysis.

Plaintiffs-Appellees also cite *Center for Bio-Ethical Reform v. L.A. County Sheriff's Dept.*, 533 F.3d 780 (9th Cir. 2008), in support of their contention, but that case only serves to underscore the problem. "The entity" was found in that case to be the L.A. County Sheriff's Office, so it can hardly be said to support the presumption of Plaintiffs-Appellees here that their suit against the Sheriff in his official capacity automatically made the County a party (again, taking it for granted that the County is "the entity"), and even their agreement to dismiss the

14

County as unnecessary could not alter that. This conception of the County's stipulated dismissal would make it a peculiar procedural creature indeed. In effect, Plaintiffs-Appellees are arguing that it was a non-dismissal dismissal, a dismissal they stipulated to with their fingers crossed behind their back, a dismissal that eliminated the County's status as a party litigant only nominally, if at all. If such a beast ever roamed the jungles of Anglo-American jurisprudence, its existence has been, and remains, a remarkably well-kept secret.

Of arguably even greater implausibility is Plaintiffs'-Appellees' argument that MSCO is part of the County, and therefore the County continued to participate in the litigation after its dismissal, only in the guise of MCSO. *See* Opp. Br. at 19-20. Here again we have the non-dismissal dismissal in a slightly different form. More fundamentally, however, Plaintiffs-Appellees ignore the fact that MCSO has been found by this Court in *Melendres II* to have been improperly named as a party, a conclusion with which they apparently have no present quarrel. It would seem beyond cavil that a judgment against an improperly named party is perforce a nullity, and it cannot be binding on that party or any non-party, no matter how the non-party and the improperly named party may be related. *See Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (non-party generally has not had "full and fair opportunity to litigate" and application of claim and issue preclusion against him

15

"runs up against the deep-rooted historic tradition that everyone should have his own day in court) (internal quotation marks and citation omitted).

Plaintiffs-Appellees discuss exceptions to the general rule that non-parties are not bound by judgments in cases litigated by others, suggesting a couple of those exceptions apply here. For example, they assert that a non-party may be bound if it was adequately represented by a party with "the same interests." Opp. Br. at 24. It appears, however, that Plaintiffs-Appellees consider the Sheriff's interest in defending his own policies and practices as evidence that he and the County have identical interests, despite their acknowledgment of the fact that, at certain points in the litigation while the County was still a party, the Sheriff and the County took diametrically opposed positions with respect to certain issues. *Id*. at 25.

Plaintiff-Appellees also suggest that the County's involvement in appointing counsel to represent the Sheriff and payment of his legal fees arising out of the litigation equates to "controlling" the litigation. As every member of the bar knows, however, the fact that a third party may have arranged for his representation of a client and paid his fees, it is the client, not the third party, to whom the lawyer owes his fealty and from whom he takes his direction. *See, e.g*., Rule 42, ER 1.8(f), Rules of the Supreme Court of Arizona (lawyer may not accept

16

fee from third party without client's consent, assurance that there will be no interference by the third party payor in the representation, and client confidences will be protected).

## IV. THE ISSUES IN THIS APPEAL REFLECT LIVE CONTROVERSIES, NOT "ABSTRACT ISSUES" NOT YET RIPE FOR REVIEW.

The issues of whether the County can be liable for unconstitutional conduct by the Sheriff and his deputies in the enforcement of State and federal immigration laws, and whether the County can be bound by orders of the district court long after the County was dismissed from the case and on the basis of a record the County effectively played no role in shaping, are not "abstract," as Plaintiffs-Appellees would have it, but live, active controversies in need of immediate resolution. The County has been pulled back into this case long after the entry of judgment and remedial orders that, as a non-party, it had no opportunity to try, brief, or argue. Whether the County can have any liability for the actions on which those orders were premised, and whether the County can be bound by those orders, are both issues that would have had to have been addressed at the time the judgment and orders were entered if the County had been a party to the case at that

17

time.  Because the County was not a party and the issues were not addressed and adjudicated at that time, however, they must be dealt with now.[5]

### V.  PLAINTIFFS-APPELLEES HAVE FAILED TO SHOW HOW THE DISTRICT COURT'S INJUNCTIVE ORDER COULD BE APPLIED TO THE COUNTY WITHOUT OFFENDING THE TENTH AMENDMENT AND THE GUARANTEE CLAUSE.

Maricopa County does not seek in this appeal to dispute that the Permanent and Supplemental Injunction issued by the District Court were beyond its authority and the legitimate exercise of its discretion as regards to Sheriff Arpaio.  Maricopa County disputes that it can be made responsible for assuring compliance with these injunctions by governmental agencies (the Sheriff and MCSO) over which it is barred by the Arizona Constitution and laws from exercising such control.  Thus, *Rizzo v. Goode*, 423 U.S. 362 (1976) and *Gregory v. Ashcroft*, 501 U.S. 452 (1991), are directly on point and require this Court to find that the County is not bound by those orders, or reverse its decision substituting Maricopa County for MCSO.  To hold otherwise, would place this Court squarely at odds with

---

[5] Contrary to the assertion of Plaintiffs-Appellees, this appeal does not seek "this Court's views on potential injunctive relief to be granted in the future . . . ."  Opp. Br. at 28.  The District Court has already made it quite clear that it considers the County bound by at least some aspects of the remedial orders issued after its dismissal from the case.  See Tr. 813, copy of excerpt attached hereto as SER00882-883.

fundamental principles of federalism, the Constitution's guarantee of a republican form of government, and the Supreme Court's holding in *Rizzo*.

Respondents attempt in vain to distinguish *Rizzo*, which when properly understood precludes the Court's and the District Court's application of the injunctions against Maricopa County. Respondents' argument fails because the present case insofar as the rights and interests of Maricopa County are concerned is controlled by *Rizzo*. The Supreme Court definitively stated that,

> Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the "special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.

*Rizzo*, 423 U.S. at 378.

In reversing the lower courts injunction, the Supreme Court noted that "the responsible authorities had played no affirmative part in depriving any member of the two respondent classes of any constitutional rights." Similarly, no finding of unlawful conduct by the County has been made in this case. Absent a finding of participation by the County in unconstitutional conduct, no equitable relief can be

19

granted, or enforced against the County for violations that the Sheriff has been found to have committed.[6]

## CONCLUSION

For all the foregoing reasons, as well as those raised in the County's Opening Brief, the County respectfully submits that this Court should grant its appeal, holding that the County cannot be found liable for the actions of the Sheriff in this case under the analysis prescribed in the Supreme Court's *McMillian* decision, and further holding that the County is not bound by any of the district court's remedial orders.


RESPECTFULLY SUBMITTED this 4th day of January, 2016.

**WALKER & PESKIND, PLLC**


By: /s/ Richard K. Walker, #004159
    Richard K. Walker, Esquire
    16100 N. 71st Street, Suite 140
    Scottsdale, AZ 85254
    *Counsel for Defendant/Appellant*
    *Maricopa County, Arizona*

---

[6] Maricopa County takes no position on the findings of the district court and of this Court that the Sheriff and MCSO have violated the constitutional rights of plaintiffs and class members. Nor does Maricopa County challenge the injunctive relief entered against the Sheriff by the district court.

20

CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME
LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS
FOR 15-15996

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

   ■   this brief contains 4,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   □   this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   □   this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* _____ *(state font size and name of type style _____, or*

   □   this brief has been prepared in a monospaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style ____.*

Dated this 4th day of January, 2016.

/s/ Richard K. Walker_____
Richard K. Walker
Attorney for Defendant-Appellant

**CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING**

I hereby certify that on January 4, 2016, I electronically filed the Defendant/Appellant Maricopa County, Arizona's Reply Brief, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Michelle Giordano